SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

CIVIL DIVISION

RECEIVED
Civil Clerk's Office
OCT 17 2014
Superior Court of the
District of Columbia
Washington, D.C.

**CORNIELIUS FELDER, as personal representative of the Estate of HAROLD INGRAM,**
200 Virginia Street, Apartment 9
Kenbridge, Virginia 23944

**Plaintiff,**

v.

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY,**

Serve:
Susan Serrian
600 Fifth Street, N.W.
Washington, DC 20001

And

**CHRIS HAMLIN,**

Serve:
c/o WMATA
Susan Serrian
600 Fifth Street, N.W.
Washington, DC 20001

**Defendants.**

**Civil No.** 14-0006601

**COMPLAINT**

**(Wrongful Death, Survival of Actions)**

**Parties**

1. This case concerns the death of plaintiff's decedent, Harold Ingram, who was killed on October 6, 2013, because of the combined negligence of the defendants at a work site on a Metro rail line in northeast Washington, D.C.

2. Harold Ingram was born on August 25, 1972, and resided at 113 Taylor Street, Blackstone, Virginia 23824. Cornielius Felder, the duly appointed personal representative of the estate of Harold Ingram, sues on behalf of Mr. Ingram's estate and his surviving children, and brings all claims available to Mr. Ingram's estate and the beneficiaries under survival of actions and wrongful death statutes.
3. Mr. Ingram was not married at the time of his death.
4. Mr. Ingram had five children: Cornielius Felder (age 22); who resides at 200 Virginia Street, Apartment 9, Kenbridge, Virginia 23944; Damien Jackson (21), who resides at 113 Taylor Street, Blackstone, Virginia 23824; Danielle Jackson (19) and Jordan Jackson (15), both of whom reside at 109 E. 5th Avenue, Lawrenceville, Virginia 23868; and Thomas Ingram (7), who resides at 464 Burkeville Road, Victoria, Virginia 23974.

**Facts**

5. Mr. Ingram was employed as a welder trainee for Holland, LLC, a subcontractor for the Washington Metropolitan Transit Authority (WMATA).
6. Holland was contracted to assist in replacing rails on the Glenmont-bound tracks of the Metro's Red Line.
7. Mr. Ingram was killed while working on a stretch of track between Union Station and the NoMa-Gallaudet U Station.
8. In the early morning of Sunday, October 6, 2013, Mr. Ingram and Holland employees Justin McFerrin and William Davis, Sr., were employed with a team of WMATA employees replacing a section of train rails.
9. All WMATA employees working on this rail repair job were working during the course of their employment and within the scope of their employment with WMATA.

10. This job involved three major pieces of equipment: (1) A prime mover (an equipment loaded railroad car), also manufactured by Plasser, which sits on the rails; (2) A welder, manufactured by Plasser American Corporation, which was owned by Holland, and which was suspended by a crane connected to the prime mover; and (3) a speed swing, manufactured by Pettibone, LLC, which operates both on wheels and on tracks.
11. Both the prime mover and speed swing were owned by WMATA and operated by WMATA employees.
12. WMATA employees, in the first step of this job, placed the new piece of rail next to the piece of track being removed. This was accomplished using the speed swing.
13. WMATA employee Chris Hamlin operated the speed swing throughout this job.
14. Each rail is 39 feet long and weighs approximately 1768 pounds.
15. Next, WMATA employees cut the piece of rail being removed using a hydraulic saw.
16. The saw was operated by compressed hydraulic fluid, coming from a hose that runs from the prime mover, which was operated by WMATA employee Chris Cunningham.
17. The hydraulic fluid hose was manufactured by Parker Hannifan Corporation, Parflex Division, model 518C-89.
18. Once the rail was cut, Mr. Hamlin, using the speed swing, lifted out the old piece of rail and placed it on the ground.
19. Mr. Hamlin then picked up the new section of rail with the speed swing and placed it in alignment with the other rails.
20. Mr. Hamlin then picked up the old piece of rail with the speed swing and moved down the tunnel, away from where the new rail had been placed.

21. Next, Holland employees, including Mr. Ingram, welded the new piece of rail to the adjoining pieces of rail.

22. The welders electrically generate high temperatures, which melt the ends of the rails and fuse them in place.

23. WMATA employee Jamal Haggle then stepped in with a hydraulically operated profile grinder, which grinds the welded surfaces flat.

24. During grinding, the hydraulic hose ruptured approximately 10 feet from the grinder, causing a spray of hydraulic fluid at 3000 psi.

25. This rupture was caused by a defect in the hose.

26. Alternatively, the rupture was caused by a hot ember coming from the grinding process.

27. The hydraulic fluid then ignited, and a large ball of flame erupted from the hose.

28. The flame caused Mr. Hamlin to raise the speed swing crane, holding the old piece of rail, causing the crane to strike the tunnel ceiling.

29. The suspended rail then swung and struck Mr. Ingram, causing his fatal injuries as well as injuries to WMATA employees Lyle Rardon and Daniel Smith.

30. Mr. Ingram was initially stunned but conscious after being struck. However, Mr. Ingram died in an ambulance on route to the hospital.

**Liability**

31. WMATA's employee, Chris Hamlin, negligently operated the speed swing, causing the older piece of rail that was suspended in the speed swing to strike Mr. Ingram, causing his death.

32. Mr. Hamlin was negligent in these ways:

a. First, Mr. Hamlin should not have had the piece of rail elevated in the speed swing during the welding and grinding process. The rail should have been placed on the ground.

b. Second, Mr. Hamlin should have turned off and/or deactivated his controls during the welding and grinding process.

c. Third, Mr. Hamlin failed to properly control the movement of the rail being held by the speed swing, causing the rail to strike Mr. Ingram.

33. Mr. Hamlin's negligence proximately caused the rail to strike Mr. Ingram.

34. Mr. Hamlin's negligence was a proximate cause of Mr. Ingram's death.

35. Mr. Hamlin was acting within the scope of and during the course of his employment with WMATA at the time of his negligence.

36. WMATA and Hamlin are therefore jointly and severally liable for all damages caused by Mr. Hamlin's negligence.

37. WMATA negligently failed to train and instruct Mr. Hamlin to use the speed swing properly.

38. WMATA's negligent failure to train and instruct Mr. Hamlin to use the speed swing properly resulted in his negligence, which proximately caused Mr. Ingram's death.

39. WMATA employees negligently failed to inspect the hose that ruptured.

40. WMATA employees' negligent failure to inspect the hydraulic fluid hose resulted in their failure to detect the defect, which caused the rupture of the hose, and proximately caused the accident that resulted in Mr. Ingram's death.

41. WMATA employees negligently failed to maintain the hydraulic fluid hose in a manner to prevent it from rupturing during the track repair.

42. Proper maintenance of the hydraulic fluid hose by WMATA employees would have included taking safety measures to prevent its rupture by abrasions, wear-and-tear, or hot embers, including using a Kevlar protective sheath over the hose.

43. WMATA employees' negligent failure to maintain the hydraulic fluid hose resulted in their failure to prevent the rupture, which proximately caused the accident that resulted in Mr. Ingram's death.

44. WMATA employees negligently failed to conduct a proper job briefing at the site of the accident, prior to beginning work on October 6, 2013.

45. A proper briefing by WMATA employees would have ensured that WMATA employees had properly inspected all of the equipment being used on the job, including the hydraulic fluid hose.

46. A proper inspection by WMATA employees of the hydraulic fluid hose would have resulted in a discovery of the defect in the hose, and prevented the accident that resulted in Mr. Ingram's death.

47. A proper briefing by WMATA employees would have ensured that WMATA employees, including the speed swing operator, Mr. Hamlin:

    a. Were knowledgeable about the rules, regulations and work procedures, including the placement of the rails during the job;
    b. Assigned specific job procedures, including for handling rails;
    c. Identified any potential hazards associated with working in the tunnel;
    d. Were properly trained and qualified to perform their jobs.

48. WMATA employees' failure to conduct a proper briefing resulted in Mr. Hamlin's negligence (keeping the old rail elevated during the welding and grinding; keeping his

controls on and/or activated; and failing to control the movement of the rail) which proximately caused Mr. Ingram's death.

**Damages**

49. Mr. Ingram is survived by his son and personal representative, Cornielius Felder, and his other children: Jordan Jackson, Damien Jackson, Danielle Jackson, and Thomas Ingram.

50. Mr. Ingram and his children were all residents of Virginia at the time of Mr. Ingram's death.

51. The plaintiff, on behalf of all survivors, asks for all damages that Mr. Ingram would have been entitled to claim during his lifetime, and all damages permitted by the Virginia Wrongful Death Act, Va. Code §§ 8.01-50, et seq., including medical and funeral expenses, loss of financial support and services, and the survivors' past, present and future sorrow, mental anguish, loss of solace including the loss of society, companionship, comfort, guidance, kindly offices, and advice of the decedent.

52. Alternatively to damages allowed under Virginia law, the plaintiff Cornielius Felder makes claim on behalf of those who depended on Mr. Ingram, against the defendants, jointly and severally, for all damages recoverable under the District of Columbia Wrongful Death Act, D.C. Code § 16-2701, including: loss of financial support, loss of household services, and loss of care, education, training, guidance and parental advice that Mr. Ingram would have been expected to give if he had not died prematurely.

53. Alternatively to damages allowed under Virginia law, the plaintiff Cornielius Felder, as personal representative of Mr. Ingram's estate, makes claim against the defendants, jointly and severally, for all damages recoverable under the District of Columbia Survival of Actions Act, D.C. Code § 12-101, including: Mr. Ingram's conscious pain and suffering from the time of his injury until his death, the loss of his net lifetime earnings after personal

maintenance and support of family members (accumulations), funeral bills and medical expenses.

54. Plaintiff demands judgment against defendants, jointly and severally, in the amount of $10 million, plus costs.

Respectfully submitted,

Patrick A. Malone (D.C. Bar No. 397142)
Daniel C. Scialpi (D.C. Bar No. 997556)
Patrick Malone & Associates, PC
1111 16th Street, N.W., Suite 400
Washington, DC 20036
Phone: (202) 742-1500
Fax: (202) 742-1515

Walter Emroch, Esq. (D.C. Bar No. 224485)
Emroch & Kilduff, LLP
3600 W Broad St
Suite 700
Richmond, VA 23230
Phone: (804) 358-1568
Fax: (804) 353-5817

*Plaintiff's Counsel*

**JURY DEMAND**

The plaintiff demands trial by jury.

Patrick A. Malone, Esq.

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**500 Indiana Avenue, N.W., Suite 5000**
**Washington, D.C. 20001 Telephone: (202) 879-1133**

Cornielius Felder, as personal representative of the Estate of Harold Ingram

Plaintiff

vs.

Case Number 14-0006601

Washington Metropolitan Area Transit Authority

Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Patrick A. Malone
Name of Plaintiff's Attorney

1111 16th St. NW, Suite 400
Address
Washington, DC 20036

202-742-1500
Telephone

*Clerk of the Court*

By [signature]
Deputy Clerk

Date 10/12/14

如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시요    የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

# TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA
## DIVISIÓN CIVIL

500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Teléfono: (202) 879-1133

________________________________________
Demandante

contra

Número de Caso: ____________________

________________________________________
Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veinte (20) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que Usted le entregue al demandante una copia de la Contestación o en el plazo de cinco (5) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

______________________________
Nombre del abogado del Demandante

*SECRETARIO DEL TRIBUNAL*

______________________________
Dirección

Por: ______________________________
Subsecretario

______________________________

______________________________
Teléfono

Fecha ______________________________

如需翻译,请打电话 (202) 879-4828 Veuillez appeler au (202) 879-4828 pour une traduction Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시오 የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO, O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍAN RETENERLE SUS INGRESOS, O PODRÍAN TOMAR SUS BIENES PERSONALES O RAÍCES Y VENDERLOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO*.

Si desea converser con un abogado y le parece que no puede afrontar el costo de uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-682-2700) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse de otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

10/22/14 12:44 [handwritten notation]

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

ESTATE OF HAROLD INGRAM
Vs. C.A. No. 2014 CA 006601 B
WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY et al

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each Judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Lee F. Satterfield

Case Assigned to: Judge MAURICE ROSS
Date: October 17, 2014
Initial Conference: 9:00 am, Friday, January 16, 2015
Location: Courtroom 100
500 Indiana Avenue N.W.
WASHINGTON, DC 20001

**ADDENDUM TO INITIAL ORDER AFFECTING ALL MEDICAL MALPRACTICE CASES**

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www:dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Lee F. Satterfield