**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CORNIELIUS FELDER,**<br>*As Administrator of the Estate of Harold*<br>*Ingram,*<br><br>                                            **Plaintiff,**<br><br>        **v.**<br><br>**WMATA,**<br><br>                                            **Defendant.** | **Civil Action No. 14-01905 (TFH)** |

## MEMORANDUM OPINION

Pending before the Court is Defendant Washington Metropolitan Area Transit Authority's Motion to Dismiss Plaintiff's Complaint In Part [ECF No. 7], which seeks the dismissal of the plaintiff's causes of action for (1) negligent training and instruction and (2) compensatory damages pursuant to the Virginia Wrongful Death Act.  Upon consideration of the legal briefs filed by the parties, the Court finds that oral arguments are not necessary and, for the reasons that follow, it will grant the motion in part with respect to the claim for negligent training and instruction.  A ruling regarding the motion to dismiss the claim for compensatory damages pursuant to the Virginia Wrongful Death Act will be the subject of a memorandum opinion that will be issued separately.

## BACKGROUND AND PROCEDURAL POSTURE

According to the allegations contained in the plaintiff's Complaint, on October 6, 2013, Harold Ingram was working for a Washington Metropolitan Area Transit Authority ("WMATA") subcontractor on a project to replace part of the Red Line metro rail track when he was fatally struck by a section of rail that was suspended from a Pettibone Speed Swing being operated by a WMATA employee.  Compl. ¶¶ 5-8, 13, 29 [ECF No. 7-2].  On October 17, 2014, this lawsuit was commenced in the D.C. Superior Court by Cornelius Felder, who is Harold Ingram's son and the personal representative for Mr. Ingram's estate.  Compl. ¶¶ 2, 4 (identifying Cornelius Felder).  Although the Complaint fails to set forth separately-titled counts, it appears to allege the following causes of action:  (1) negligence by the WMATA employee who operated the Speed Swing, (2) negligent failure to train and instruct the WMATA employee who operated the Speed Swing, (3) negligent failure to inspect, maintain, and detect a defect in a hydraulic fluid hose that ruptured, (4) and negligent failure to conduct a "proper" job briefing at the site of the accident.  Compl. ¶¶ 31-48.

In accordance with Section 81 of the Washington Metropolitan Area Transit Regulation Compact (the "WMATA Compact"), which provides that federal district courts shall have concurrent original jurisdiction over suits against WMATA, D.C. Code § 9-1107.01(81) (West 2014), WMATA removed the case to this Court.  On November 19, 2014, WMATA filed the pending motion to dismiss.  Less than a month later, the parties notified the Court that WMATA had stipulated that the employee operating the Speed Swing was acting within the scope of his employment and, based on that stipulation, the plaintiff dismissed the lawsuit against the employee.  Def.'s Stipulation Regarding Scope of Employment & Pl.'s Notice of Dismissal of

--2--

Def. [ECF No. 9].  As a result of the voluntary dismissal, WMATA is the only remaining defendant in this case.

## LEGAL STANDARDS

The defendant moved to dismiss the plaintiff's Complaint pursuant to Rule 12(b)(1) on the ground that WMATA is immune from liability for negligent training and instruction.  Def.'s Mot. to Dismiss Pls.'s Complaint In Part 7 [ECF No. 7].  The defendant also moved to dismiss the compensatory damages claim in accordance with Rule 12(b)(6) for failure to state a claim for relief.  *Id.* at 11.  Because the Court finds that the defendant's first challenge is more properly considered under the rubric of Rule 12(b)(6), *see Sierra Club v. Jackson*, 648 F.3d 848, 853 (D.C. Cir. 2011) (indicating that a claim that an agency's action was not justiciable because it involved a discretionary function should have been considered under Rule 12(b)(6) rather than Rule 12(b)(1)), the Court will assess both challenges to determine whether the plaintiff has stated a claim for which relief can be granted.

Pursuant to Rule 8 of the Federal Rules of Civil Procedure, to survive a motion to dismiss a complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  "Under the Supreme Court's rearticulation of pleading requirements in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), '[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 129 (D.C. Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).

Consistent with these principles, the Court employs a two-prong approach to consideration of whether a complaint's dismissal is warranted. *Iqbal*, 556 U.S. at 679. First, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* As the Supreme Court has explained, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Second, after identifying any well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. Allegations are plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The Court's evaluation of the complaint to determine whether it states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## DISCUSSION

WMATA contends that the plaintiff's claims for negligent training and instruction must be dismissed because WMATA is immune from liability for such claims pursuant to Section 80 of the WMATA Compact. Def.'s Mem. of P. & A. In Support of Its Mot. to Dismiss Pl.'s Compl. 3, 4-5 [ECF No. 7-1]. There appears to be no dispute between the parties about the legal principles that apply, but the plaintiffs argue that dismissal of the negligent training and instruction claim would be premature before discovery is conducted, Pl.'s Opp'n Br. 3 [ECF No.

10], because "[d]iscovery might reveal that there are in fact specific WMATA policies and procedures related to the training of employees like [the Speed Swing operator]," *id.* at 4.

"In 1966, acting pursuant to the Compact Clause of the Constitution, U.S. Const. art. I, § 10, cl. 3, Congress approved the Washington Metropolitan Area Transit Authority Compact between Maryland, Virginia, and the District of Columbia to deal with growing traffic problems in the Washington area." *Beebe v. WMATA*, 129 F.3d 1283, 1285 (D.C. Cir. 1997).  This agreement is referred to as the "WMATA Compact." *Burkhart v. WMATA*, 112 F.3d 1207, 1216 (D.C. Cir. 1997).  "In signing the WMATA Compact, Maryland, Virginia, and the District of Columbia conferred upon WMATA their respective sovereign immunities." *Beebe*, 129 F.3d at 1287.  Accordingly, Section 80 of the WMATA Compact "provides that '[t]he Authority shall be liable . . . for its torts and those of its Directors, officers, employees and agents committed in the course of any proprietary function . . . but shall not be liable for any torts occurring in the performance of a governmental function.'"  *Burkhart*, 112 F.3d at 1216 (quoting former D.C. Code § 1–2431(80), now D.C. Code § 9-1107.01(80)).

The D.C. Circuit has "acknowledged . . . that section 80 of the WMATA Compact provides a limited waiver of WMATA's sovereign immunity for torts committed in the conduct of any proprietary function, but not for torts occurring in the performance of a governmental function." *KiSKA Constr. Corp. v. WMATA*, 321 F.3d 1151, 1158 (D.C. Cir. 2003) (internal quotation marks omitted and emphasis added).  "Unless the limited waiver of immunity applies, the district court lacks jurisdiction to enter a judgment against [WMATA]." *Id.* (internal quotation marks omitted).  "[T]he question of whether an activity is a governmental function for

purposes of the WMATA Compact 'is one of federal law.'" *Burkhart*, 112 F.3d at 1216 (quoting

*Sanders v. WMATA*, 819 F.2d 1151, 1154 (D.C. Cir. 1987)).

In *KiSKA Construction Corp.*, the D.C. Circuit explained that "[b]ecause the distinction

between proprietary and governmental functions has created a quagmire that has long plagued

the law of municipal corporations, we have interpreted section 80 as incorporating the distinction

between discretionary and ministerial functions, a dichotomy set forth in the Federal Tort Claims

Act ('FTCA')." 321 F.3d at 1158 (internal quotation marks and citations omitted).

Accordingly, given that "[o]nly those activities considered discretionary are shielded by

sovereign immunity, WMATA's immunity turns on whether the [challenged] activity is

discretionary or ministerial." *Id.* (internal quotation marks and citations omitted).

The D.C. Circuit has adopted a two-part test to determine whether a particular function is

discretionary or ministerial:

> First, we ask "whether any '"statute, regulation, or policy specifically prescribes a
> course of action for an employee to follow.'" *Id.* (quoting *Cope v. Scott*, 45 F.3d
> 445, 448 (D.C.Cir.1995) (quoting *United States v. Gaubert*, 499 U.S. 315, 322
> (1991))). If a course of action is so prescribed, "sovereign immunity does not bar
> suits based on an employee's failure to follow the prescribed course of conduct."
> *Burkhart*, 112 F.3d at 1217. If the governing statutes or regulations leave room for
> the exercise of discretion, however, we ask a second question: "whether the
> exercise of discretion is 'grounded in 'social, economic, or political goals.'" *Beebe*,
> 129 F.3d at 1287 (quoting *Cope*, 45 F.3d at 448 (quoting *Gaubert*, 499 U.S. at
> 323)). If the exercise of discretion is so grounded, and hence "susceptible to policy
> judgment," *Cope*, 45 F.3d at 448, the "activity is 'governmental,' thus falling within
> section 80's retention of sovereign immunity," *Beebe*, 129 F.3d at 1287.

*Id.* at 1159 (parallel citations omitted). "'Generally speaking, a duty is discretionary if it

involves judgment, planning, or policy decisions. It is not discretionary [i.e., ministerial] if it

involves enforcement or administration of a mandatory duty at the *operational level*, even if

professional expert evaluation is required.'" *Beatty v. WMATA*, 860 F.2d 1117, 1127 (D.C. Cir.

1988) (quoting *Jackson v. Kelly*, 557 F.2d 735, 737-38 (10th Cir.1977)) (emphasis in original).
*Accord KiSKA Const. Corp.*, 321 F.3d at 1159 (quoting *Beatty*, 557 F.2d at 1127).

WMATA relies on the decision in *Burkhart* to support its claim that "the D.C. Circuit has already determined 'that decisions concerning the hiring, training, and supervising of WMATA employees are discretionary in nature, and thus immune from judicial review.'"  Def.'s Reply Br. 2 [ECF No. 11] (quoting *Burkhart*, 112 F.2d at 1217).  The plaintiff counters, however, that the D.C. Circuit "never held that all aspects of training of all WMATA employees would forever be barred as discretionary," Pl.'s Opp'n Br. 3 [ECF No. 10], and "[d]iscovery might reveal that there are in fact specific WMATA policies and procedures related to the training of employees like [the Speed Swing operator]," *id.* at 4.

In *Burkhart*, the D.C. Circuit considered whether WMATA was immune from suits that challenged its "hiring, training, and supervision practices."  112 F.3d at 1216.  The plaintiff in *Burkhart* was a deaf Metrobus passenger who got into a physical altercation with a WMATA bus operator over a fare dispute.  *Id.* at 1209.  In addition to a number of other tort claims, the plaintiff alleged that WMATA "negligently hired, trained and supervised its bus operators and, as a result, caused the assault and battery at issue."  *Id.* at 1209-10.  After a trial, the jury returned a verdict in favor of the plaintiff and "found WMATA directly liable for negligent hiring, training and supervision, and awarded [the plaintiff] $50,000 for injuries caused by the defendants' acts."  *Id.* at 1210 (internal quotation marks omitted).

On appeal, the D.C. Circuit reversed the judgment in part and held that "decisions concerning the hiring, training, and supervising of WMATA employees are discretionary in nature, and thus immune from judicial review."  *Id.* at 1217.  With respect to the first step of the

test to determine whether a function is discretionary, the D.C. Circuit noted that "[t]he parties

have pointed to no law or policy 'specifically prescrib[ing]' guidelines for the hiring, training, or

supervision of WMATA employees." *Id.*  The D.C. Circuit went on to find that the WMATA

Compact conferred "broad power" to WMATA with respect to employment and "hardly

contrain[ed] WMATA's determination of whom it will employ or how it will train and supervise

such employees." *Id.* at 1217.  The D.C. Circuit concluded that, "[t]hus, WMATA has choices to

make." *Id.*  Proceeding to step two, the D.C. Circuit reasoned that:

> The hiring, training, and supervision choices that WMATA faces are choices "susceptible to policy judgment." The hiring decisions of a public entity require consideration of numerous factors, including budgetary constraints, public perception, economic conditions, "individual backgrounds, office diversity, experience and employer intuition." *Tonelli v. United States*, 60 F.3d 492, 496 (8th Cir. 1995). Similarly, supervision decisions involve a complex balancing of budgetary considerations, employee privacy rights, and the need to ensure public safety. The extent of training with which to provide employees requires consideration of fiscal constraints, public safety, the complexity of the task involved, the degree of harm a wayward employee might cause, and the extent to which employees have deviated from accepted norms in the past. Such decisions are surely among those involving the exercise of political, social, or economic judgment. *See*, *e.g.*, *Kirchmann v. United States*, 8 F.3d 1273, 1277 (8th Cir. 1993) (holding that supervision of government contractors is a "discretionary function"); *Tonelli*, 60 F.3d at 496 (stating that "issues of employee supervision and retention generally fall within the discretionary function exception"); *K.W. Thompson Tool Co. v. United States*, 836 F.2d 721 (1st Cir.1988) (holding that "failure to properly train and supervise EPA personnel" falls within the discretionary function exception).

*Id.*  Resolving that steps one and two pointed to a discretionary function, the D.C. Circuit

ultimately held that "the hiring, training, and supervision of WMATA personnel are

governmental functions . . . WMATA is therefore immune from suit for negligence in the

performance of such functions . . . [and] [t]he district court erred in refusing to dismiss [the

plaintiff's] negligent hiring, training, and supervision claims against WMATA." *Id.*

Case 1:14-cv-01905-TFH   Document 16   Filed 05/21/15   Page 9 of 12

The plaintiff argues that the D.C. Circuit's decision in *Burkhart* does not foreclose a determination that a particular WMATA hiring, training or supervising function is ministerial because "the decision shows that WMATA's own policies constraining its discretion in the specific subject[1] at issue are key in making such a determination."  Pl.'s Opp'n Br. 3 [ECF No. 10].   The plaintiff omits, however, to provide a pinpoint citation to any discussion in *Burkhart* that indicates that WMATA's "own policies constraining its discretion" were deemed to be "key in making such a determination" or, much less, were given any consideration at all by the D.C. Circuit.  The *Burkhart* decision is devoid of any discussion about WMATA's "own policies constraining its discretion" [2] so it is unclear where the plaintiff is deriving this argument.  The D.C. Circuit looked only at the D.C. statute that implements the WMATA Compact to conclude that decisions concerning the hiring, training and supervising of WMATA employees involve discretionary functions.

The plaintiff raises a fair point, however, that the D.C. Circuit's decision in *Beebe*, which was decided about six months after *Burkhart*, leaves open the possibility that some actions that are related to employment decisions might not be considered discretionary.  In *Beebe*, a WMATA attorney sued when his position was eliminated during an office reorganization and he was demoted rather than being hired for the replacement position.  129 F.3d at 1286.  The

---

[1]     The plaintiff identifies the "specific subject" as "how bus drivers should deal with deaf customers" but the D.C. Circuit does not appear to have so limited its consideration.  Pl.'s Opp'n Br. 3 [ECF No. 10].

[2]     Although unclear, it strikes the Court that the plaintiff must be referring to internal policies WMATA might have promulgated or issued given that the implementing statute constitutes Congress's (not WMATA's) policies and the most likely thing the plaintiff can endeavor to obtain via discovery that is not already available in some public form are internal policies and procedures.

plaintiff raised a number of legal challenges to the way WMATA conducted the reorganization and ensuing events. *Id.* Applying the two-part test to determine whether WMATA's choices about who to appoint to oversee the reorganization, as well as later actions by two officials during the course of the reorganization, involved discretionary activities, the D.C. Circuit concluded that the discretion to conduct the office reorganization was like the discretion to hire, train and supervise bus operators that was the subject of its earlier decision in *Burkhart*. *Id.* at 1288 (stating that "we perceive no distinction between the discretion here and the hiring, training, and supervision of bus operators at issue in *Burkhart*"). The D.C. Circuit cautioned, however, that "[o]f course, not every action connected in some way to an employment decision amounts to a discretionary function." *Id.*

   The plaintiff seizes on the D.C. Circuit's cautionary comment as support for his argument that the Court should allow discovery so he can determine whether "there are in fact specific WMATA policies and procedures related to the training of employees like [the Speed Swing operator]." Pl.'s Opp'n Br. 4 [ECF No. 10]. According to the plaintiff, "[w]ithout discovery, it is impossible to know whether such policies and procedures exist." *Id.* A plaintiff may not, however, use discovery to obtain the facts necessary to establish a claim that is plausible on its face pursuant to *Twombly* and *Iqbal* -- even when those facts "are only within the head or hands of the defendant[]." *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011). As the Supreme Court in *Iqbal* admonished, "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." 556 U.S. at 678-79. "[W]here the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

In this case, the plaintiff's cause of action for negligent hiring and instruction consists of the following two allegations:

> 37.  WMATA negligently failed to train and instruct [the Speed Swing operator] to use the speed swing properly.

> 38.  WMATA's negligent failure to train and instruct [the Speed Swing operator] to use the speed swing properly resulted in his negligence, which proximately caused Mr. Ingram's death.

Compl. ¶¶ 37, 38 [ECF No. 7-2].  These conclusory allegations represent the entirety of the negligent hiring and supervision claim advanced by the plaintiff.  Noticeably absent from the Complaint are any facts to buttress the legal conclusions contained in these allegations.

"Dismissal under Rule 12(b)(6) is proper when a plaintiff has failed to plead 'enough facts to state a claim to relief that is plausible on its face' and to nudge his claims 'across the line from conceivable to plausible.'"  *Abbas v. Foreign Policy Grp., LLC*, ___ F.3d ___, 2015 WL 1873140 (D.C. Cir. Apr. 24, 2015) (quoting *Twombly*, 550 U.S. at 570).  "[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Twombly*, 550 U.S. at 555.  Because the plaintiff alleged no facts to suggest, beyond the plaintiff's own speculation, that WMATA had policies and procedures in place related to employee training, the Court is constrained to find that the Complaint fails to state a claim to relief that is plausible on its face.  Consequently, it is not necessary for the Court to resolve the question of whether the D.C. Circuit's decision in *Beebe* left open the possibility that some WMATA actions involving the hiring, training and supervision of WMATA personnel could be

deemed ministerial and not entitled to immunity under section 80 of the WMATA Compact

because the plaintiff's Complaint fails to state a plausible claim for relief in any event.

## CONCLUSION

For the foregoing reasons, the Court will grant in part Defendant Washington

Metropolitan Area Transit Authority's Motion to Dismiss Plaintiff's Complaint In Part [ECF No.

7].  As the Court already stated, the defendant's remaining argument that the plaintiff failed to

state a claim for compensatory damages pursuant to the Virginia Wrongful Death Act will be the

subject of a ruling to be separately issued.  An appropriate order will accompany this

memorandum opinion.


May 21, 2015

_Thomas F. Hogan_
Thomas F. Hogan
Senior United States District Judge