UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
**CORNELIUS FELDER,**               )
as administrator of the estate of   )
Harold Ingram                       )
                                    )
            Plaintiff,              )   Case No. 14-cv-1905 (TFH/GMH)
                                    )
v.                                  )
                                    )
**WASHINGTON METROPOLITAN**         )
**AREA TRANSIT AUTHORITY et al.**   )
                                    )
            Defendants.             )
_____ )

## MEMORANDUM OPINION

This matter has been referred to the undersigned for the management of discovery and resolution of all discovery disputes. Before the Court is plaintiff's motion to compel defendant Washington Metropolitan Area Transit Authority ("WMATA") to produce a disciplinary memorandum it issued to its employee, Christopher Hamlin, relating to the accident at issue in this case. This motion is ripe for resolution. Upon consideration of the parties' briefs and the entire record herein,[1] the Court will grant in part and deny in part the motion as stated herein.

## BACKGROUND

This is a wrongful death action against WMATA for the death of a contractor, Harold Ingram, on a job site. Plaintiff alleges that on October 6, 2013, a WMATA employee,

---

[1] The relevant docket entries for purposes of this Memorandum Opinion are: (1) Plaintiff's Motion to Compel Discovery ("First Mot. to Compel") [Dkt. 51] (2) Defendant WMATA's Response to Plaintiff's First Motion to Compel ("Resp. to First Mot. to Compel") [Dkt. 57]; (3) Plaintiff's Emergency Motion to Compel Discovery ("Second Mot. to Compel") [Dkt. 58]; (4) Defendant WMATA's Response to Plaintiff's Emergency Motion to Compel ("Resp. to Second Mot. to Compel") [Dkt. 60]; (5) Transcript of October 27, 2015 Hearing [Dkt. 63]; and (6) October 27, 2015 Order [Dkt. 64].

Christopher Hamlin, struck and killed the decedent while operating heavy machinery. The instant dispute focuses on whether WMATA's disciplinary memorandum against Hamlin related to this incident is protected by the self-evaluative privilege.[2]

Plaintiff filed two motions to compel which covered largely the same ground. The discovery request at issue here is plaintiff's Request for Production No. 7(a), which requests "[t]he entire WMATA employment file, including all records of performance, supervision, evaluation, and discipline, for the following individuals involved in the incident in question: (a) Chris Hamlin." First Mot. to Compel at 4. On October 27, 2015, Judge Hogan entered an order granting in part and denying in part plaintiff's motions. See Oct. 27, 2015 Order. In that order, Judge Hogan found that several safety reports generated by WMATA after the accident were protected by the self-evaluative privilege. Id. at 3. The order did not specifically mention the disciplinary memorandum.

The parties requested several clarifications of the Court's order. One of the questions posed by the parties was whether the disciplinary memorandum should be produced. To resolve this and future discovery disputes, Judge Hogan referred this matter to the undersigned on November 17, 2015. The undersigned held a hearing on November 24, 2015, to discuss the parties' remaining dispute over the disciplinary memorandum. At the hearing, the undersigned requested that WMATA produce several documents for in camera review, including the

---

[2] In its responses to plaintiff's motions to compel, WMATA raised both the work-product doctrine and the self-evaluative privilege in defense of its failure to produce, inter alia, the disciplinary memo. See Resp. to First Mot. to Compel, at 5–8. The Court will not address the work-product doctrine further in this opinion for two reasons. First, neither party discussed the work-product doctrine in their letters to the undersigned on this issue or at the hearing before the undersigned on November 24, 2015. WMATA thus appears to have abandoned the argument. Second, even if WMATA asserted the work-product doctrine here, the Court would find it without merit. The disciplinary memorandum was not created for the purpose of litigation; instead, it was a document created as part of an internal process within WMATA for disciplining employees and recording the reasons for any discipline imposed. As such, the document would have been created irrespective of litigation. FTC v. Boehringer Ingelheim Pharmaceuticals, Inc., 778 F.3d 142, 154 (D.C. Cir. 2015) ("Where a document would have been created 'in substantially similar form' regardless of the litigation, work product protection is not available.").

disciplinary memorandum and the safety reports which the Court found to be protected by the self-evaluative privilege. See Nov. 24, 2015 Minute Order. The undersigned also ordered WMATA and plaintiff to report on whether and how disciplinary memoranda have been produced in other cases brought against WMATA. Id. On November 30, 2015, WMATA produced the requested documents to the undersigned and provided a letter reporting on the treatment of disciplinary memoranda in other cases. On December 3, 2015, plaintiff submitted a similar letter expressing his view on how such memoranda have been treated in other cases.

## LEGAL STANDARD

When a party objects to a request for production of documents under Federal Rule of Civil Procedure 34(a)(1), the requesting party may move for an order compelling disclosure of the withheld material. Fed. R. Civ. P. 37(a). The party that brings the motion to compel "bears the initial burden of explaining how the requested information is relevant." Jewish War Veterans of the United States of America, Inc. v. Gates, 506 F. Supp. 2d 30, 42 (D.D.C. 2007). The burden then shifts to the non-moving party "to explain why discovery should not be permitted." Id. If a party has withheld documents on the grounds that they are privileged, the withholding party "bears the burden of proving the communications are protected." In re Lindsey, 158 F.3d 1263, 1270 (D.C. Cir. 1998).

## ANALYSIS

**A.   WMATA's Opinions, Characterizations, and Analysis of the Accident in the Hamlin Disciplinary Memorandum are Protected by the Self-Evaluative Privilege.**

The self-evaluative privilege is designed to protect the opinions and recommendations of corporate employees engaged in the process of critical self-evaluation of the company's policies for the purpose of improving health and safety. Granger v. Nat'l R.R. Passenger Corp., 116 F.R.D. 507, 508 (E.D. Pa. 1987). The privilege seeks to encourage candid self-criticism. FTC v.

T.R.W., Inc., 628 F.2d 207, 210 (D.C. Cir. 1980). The privilege also "prevent[s] a 'chilling' effect on self-analysis and self-evaluation prepared for the purpose of protecting the public by instituting practices assuring safer operations." Granger, 116 F.R.D. at 509. As the Court in Bradley observed, discovery of self-critical evaluations is impermissible because

> the ultimate benefit to others from this critical analysis . . . far outweighs any benefits from disclosure. Valuable criticism could not be obtained under the threat of potential or possible public exposure for it is not realistic to expect candid expressions of opinion or suggested changes in policies, procedures or processes knowing that such statements or suggestions may very well be used against colleagues and employees in subsequent litigation.

Bradley v. Melroe Co., 141 F.R.D. 1, 3 (D.D.C. 1992); see also Bredice v. Doctors Hosp., Inc., 50 F.R.D. 249, 250 (D.D.C. 1970) (concluding that physician's post-incident report to internal review committee should be protected because "[c]onstructive professional criticism cannot occur in an atmosphere of apprehension that [the analysis] will be used as a denunciation of a colleague's conduct in a [negligence] suit"). However, the privilege does not protect purely factual material appearing alongside self-critical analysis. See Oct. 27, 2015 Order at 3; Martin v. Potomac Elec. Power Co., No. 86–0603, 1990 WL 158787, at *3 n.4 (D.D.C. May 25, 1990) ("[T]he privilege protects only the subjective, evaluative portions of documents; it does not bar full discovery of all statistical information and data contained in the documents.").

For instance, in Sutton, the Court ordered that WMATA produce redacted versions of several safety reports relating to the fatal bus accident at issue in that case. Sutton v. Washington Metro. Area Transit Auth., Civil Action No. 07-1197 (D.D.C. Dec. 17, 2007), slip op. at 1–4 (unpublished decision). In instructing WMATA as to how it should redact those reports, the Court distinguished between evaluative assessments and purely factual information. Id. at 2–4. The Court found that the record of past accidents involving the WMATA bus driver who caused the fatal accident was merely factual information that did not constitute the self-critical mental

4

impressions or conclusions of WMATA. Id. at 2. This included both the date of any past incident and any action taken by WMATA in response to the incident. Id. at 2, 4. However, the Court concluded that any "characterization and assessment" of the accidents was covered by the privilege. Id. at 2–3.

In this District, a party generally needs to show two elements to protect a document with the self-evaluative privilege: (1) the document must be a critique submitted as part of a mandatory government report; and (2) the document must have been prepared retrospectively as a component of a post-accident evaluation. Wainwright v. Washington Metro. Area Transit Auth., 163 F.R.D. 391, 396 (D.D.C. 1995). Courts are "reluctant to expand [the privilege] beyond cases involving public health or safety." Wade v. Washington Metro. Area Transit Auth., No. 01–cv–334, 2006 WL 890679, at *5 (D.D.C. 2006) (citing First Eastern Corp. v. Mainwaring, 21 F.3d 465, 467 n.1 (D.C. Cir. 1994)). Although "[t]he self-evaluative privilege is rarely recognized," id. (citing T.R.W., 628 F.2d at 210), the privilege has been held "applicable to WMATA safety evaluations." Wainwright, 163 F.R.D. at 396 (citing Gilbert v. Washington Metro. Area Transit Auth., No. 85–535 (D.C. Cir. Sept. 3, 1986) (unpublished decision)); Sutton, Civil Action No. 07-1197, slip op. at 2. Specifically, the Court in Gilbert extended protection to several interoffice memoranda described as "contain[ing] candid self-criticism of WMATA personnel." See Gilbert, No. 85–535, slip op. at 2–3. The privilege has been held inapplicable to internal WMATA recommendations regarding future contract negotiations, Mergentime Corp. v. Washington Metro. Area Transit Auth., Civ. A. No. 89–1055, 1991 WL 167005, at *4 (D.D.C. Aug. 6 1991), and WMATA's internal investigatory findings relating to charges of sexual harassment, Wade, 2006 WL 890679, at *5. Moreover, the Court in Wainwright found that the

privilege did not protect a pre-accident, confidential test of a WMATA escalator which later failed and injured the plaintiff.  Wainwright, 163 F.R.D. at 396.

In his order of October 27, 2015, Judge Hogan found that WMATA's three safety reports regarding the accident at issue in this case were protected by the self-evaluative privilege.  Oct. 27, 2015 Order at 3.  Judge Hogan relied on the decision of the district court in In re Lucy, No. 87-cv-2630 (D.D.C. Apr. 25, 1988) (unpublished decision), in concluding that the privilege "'protect[s] the deliberations of internal institutional bodies . . . whose function is to review and criticize the quality of the institution's work.'"  Oct. 27, 2015 Order at 3 (quoting Lucy, 87-cv-2630, slip op. at 3).  Judge Hogan further observed that the privilege does not extend to factual information contained in the safety reports.  Id.

In this case, WMATA argues that Hamlin's disciplinary memorandum is protected by the self-evaluative privilege.  WMATA asserts that the memorandum was part of its post-accident evaluation of the incident for the purpose of instituting remedial discipline and fostering better safety procedures within WMATA.  Resp. to First Mot. to Compel at 6.  WMATA argues that "[r]equiring WMATA to produce the mental impressions and opinions of WMATA personnel who evaluated the incident and made decisions on how to make the work environment safer would chill and deter future evaluations aimed at improving WMATA's safety."  Id. at 7.  Plaintiff responds that WMATA's disciplinary memorandum "is not the kind of retrospective analysis to protect public safety that would receive the protection of the self-evaluative privilege.  Rather it is an investigation into an accident involving WMATA employees and employees of one of WMATA's contractors, Holland Inc., which employed [the decedent]."  Second Mot. to Compel at 4.

The Court finds that the privilege applies to WMATA's recommendations and conclusions in the memorandum. First, WMATA has shown that Hamlin's disciplinary memorandum was prepared retrospectively as a component of a post-accident safety evaluation. Courts in this District have previously extended the privilege to such WMATA safety evaluations and candid self-criticism of WMATA employees. Wainwright, 163 F.R.D. at 396; Gilbert, No. 85–535, slip op. at 2–3. Plaintiff argues that public safety is not implicated by WMATA's internal discipline of an employee, citing to this Court's decision in Wade. Second Mot. to Compel at 4. But this case is a far cry from Wade, in which the Court found that the privilege did not protect WMATA's internal investigatory findings relating to charges of sexual harassment. Wade, 2006 WL 890679, at *5. Here, although the health and safety of the public at large is not directly affected by WMATA's job-site operations, the health and safety of WMATA employees is certainly at stake. Concern for employee safety was sufficient in Granger for the court to apply the privilege. Granger, 116 F.R.D. at 510. Moreover, this Court has already found that safety reports related to this incident fall within the ambit of the privilege. Oct. 27, 2015 Order at 3. Because the conclusions and analysis in the safety reports and the Hamlin memorandum are largely the same, both should be protected. Doing so would promote the candid self-criticism necessary to improve safety that undergirds the privilege. T.R.W., 628 F.2d at 210.

Second, the Court finds that the memorandum was submitted as part of a mandatory government report. Plaintiff has admitted as much in his briefing on the issue. Plaintiff argued that WMATA created the documents related to its investigation of this incident "because it is required to under federal law." Second Mot. to Compel at 2. Specifically, WMATA "had a legally-mandated obligation to investigate this incident" pursuant to direction from the Tri-State

7

Oversight Committee, which governs WMATA. Id. at 2–3. The Court agreed with this conclusion at the hearing on October 27, 2015. Transcript of Oct. 27, 2015 Hearing at 5:8–10.

In his argument before the undersigned on November 24, 2015, plaintiff contended that although WMATA is compelled by law to perform investigations in a general sense, there is no specific requirement that WMATA discipline its employees. Thus, in plaintiff's view, the disciplinary memorandum is unlike WMATA's other investigatory materials and does not meet the mandatory-creation element of the self-evaluative privilege. The Court disagrees, finding this issue fairly concluded by plaintiff's prior representations to the Court that all of WMATA's investigatory materials were created according to legal mandate and the Court's concurrence in that conclusion.

Furthermore, even if the Court agreed with plaintiff that the Hamlin memorandum was not required by law, the Court would nevertheless find that the self-evaluative privilege should apply here. The Court in Wainwright was the first to articulate the two-part standard identified above. That standard has been cited only once since Wainwright was decided and, even in that case, the standard was not applied. See Mahnke v. Washington Metro. Area Transit Auth., 821 F. Supp. 2d 125, 150 n.16 (D.D.C. 2011) (citing Wainwright but declining to apply it). Indeed, courts prior to Wainwright appeared to find the privilege applicable without making any express finding that the documents in question were created for use in a mandatory government report. See, e.g., Gilbert, No. 85–535, slip op. at 2–3; Sutton, Civil Action No. 07-1197, slip op. at 1–4.

The Court is therefore not convinced that both elements are strictly required to establish the privilege. The more central inquiry in each case is whether the document was created for the purpose of retrospective self-criticism to improve health and safety. As explained above, the Court so finds with respect to the Hamlin memorandum. Because WMATA has made this

essential showing, the Court finds it inappropriate to deny protection even assuming this document may not have been required by law.[3] Accordingly, recommendations and conclusions contained in the memorandum are protected by the self-evaluative privilege.

**B.     Plaintiff May Discovery the Facts Set Forth in the Hamlin Memorandum Because They are Not Privileged and Plaintiff Has Demonstrated Their Relevance.**

Although the Court finds that Hamlin's disciplinary memorandum is protected by the self-evaluative privilege, the Court will order WMATA to produce a redacted version of the memorandum which excises only those portions of the document which contain WMATA's opinions, characterizations, and assessment of the accident. Specifically, WMATA shall redact only the following from the memorandum: from the first sentence of the first full paragraph of the second page of the memorandum, beginning with, "The results of. . .", through the third page of the memorandum up to and excluding the sentence beginning "[a]s a result of this incident. . . ." The remainder of the document, including the document header, the description of the incident, the description of the discipline imposed, the handwritten portions, and the signature block, contains factual information which plaintiff is entitled to discover because he has made the threshold showing of relevance. See Sutton, Civil Action No. 07-1197, slip op. at 1–4.[4]

---

[3] As noted above, the parties reported to the Court regarding the treatment of disciplinary memoranda in other cases brought against WMATA. The Court finds those cases largely unhelpful. During the pendency of the Fort Totten case, 10-mc-314 (D.D.C.), the disciplinary memorandum at issue was disclosed by the National Transportation Safety Board as part of the Board's investigation, not by WMATA. As for Mahnke, although the disciplinary memorandum at issue was disclosed, such disclosure was inadvertent. See Mahnke v. Washington Metro. Area Transit Auth., 821 F. Supp. 2d 125, 150–51 (D.D.C. 2011). Indeed, the Court found that WMATA's accidental disclosure of its disciplinary findings in a press release did not foreclose the argument that the memorandum should be excluded from trial pursuant to Federal Rule of Evidence 407. Id. at 151–52. Furthermore, the Court in Mahnke never ruled on the applicability of the self-evaluative privilege. Instead, the Court only analyzed its admissibility under Rule 407. Id. at 150 n.16.

[4] In argument before the undersigned, counsel for WMATA represented that plaintiff was required to show substantial need to obtain any information within the memorandum. WMATA apparently borrowed this requirement from the work-product doctrine, but failed to direct this Court to any cases applying the substantial-need requirement to claims of self-evaluative privilege. Contrary to WMATA's view, the two doctrines are highly distinct. Whereas work-product protection extends to facts and opinions (in varying degrees), see Fed. R. Civ. P. 26(b)(3)(A)-(B), the self-evaluative privilege simply does not extend to facts. Oct. 27, 2015 Order at 3.

**CONCLUSION**

For the foregoing reasons, plaintiff's motion to compel defendant WMATA to produce Christopher Hamlin's disciplinary memorandum will be **GRANTED IN PART** and **DENIED IN PART**.

An appropriate Order will accompany this Memorandum Opinion.


Date: December 31, 2015                         _____
                                                G. MICHAEL HARVEY
                                                UNITED STATES MAGISTRATE JUDGE

---

Consequently, plaintiff need not show anything beyond ordinary relevance to obtain discovery of factual portions of the memorandum. The information contained within the memorandum is undoubtedly relevant to this case, and WMATA does not argue otherwise.