UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CORNIELIUS FELDER,**<br>*As Administrator of the Estate of Harold Ingram,*<br><br>          **Plaintiff,**<br><br>   **v.**<br><br>**WMATA,**<br><br>          **Defendant.** | **Civil Action No. 14-01905 (TFH)** |
| **WMATA,**<br><br>          **Third-Party Plaintiff,**<br><br>   **v.**<br><br>**HOLLAND, LP,** *et al.,*<br><br>          **Third-Party Defendants.** | |

## MEMORANDUM OPINION

This is a wrongful death case brought by plaintiff Cornielius Felder, as personal representative of the estate of Harold Ingram, against defendant Washington Metropolitan Area Transit Authority ("WMATA"). Pending before the Court is WMATA's Motion to Dismiss Plaintiff's Amended Complaint In Part [ECF No. 40], which seeks the dismissal of plaintiff's claims for (1) negligent training and supervision and (2) compensatory damages pursuant to the Virginia Wrongful Death Act. Plaintiff has filed an opposition to the motion [ECF No. 48], and WMATA a reply [ECF No. 50]. The Court will grant the motion in part to the extent WMATA

seeks dismissal of the claim for compensatory damages pursuant to the Virginia Wrongful Death Act and will separately address that part of the motion that seeks dismissal of the claim for negligent training and supervision.

## I.

According to the allegations contained in the Amended Complaint, on October 6, 2013, Mr. Ingram was working for a WMATA subcontractor on a project to replace part of a Metro rail line in Washington, D.C., when he was fatally struck by a section of rail that was suspended from a Pettibone Speed Swing operated by a WMATA employee. Amend. Compl. ¶¶ 1, 10-16, 33-35 [ECF No. 39]. At the time of Mr. Ingram's death, he and the five children that survived him (including his eldest son, Mr. Felder) were residents of the Commonwealth of Virginia. *Id.* ¶¶ 4, 6, 67. Mr. Ingram was not married at the time of his death. *Id.* ¶ 3.

On October 17, 2014, plaintiff commenced this lawsuit in the Superior Court of the District of Columbia on behalf of Mr. Ingram's estate and his surviving children. Amend. Compl. ¶¶ 2, 4, 6 [ECF No. 39]. WMATA removed the case to this Court, *id.* ¶ 2, and filed a Motion to Dismiss the Complaint In Part, which motion this Court granted in part and deferred in part, *see* ECF Nos. 7, 10, 11, 16, 17. Plaintiff subsequently filed a Motion for Leave to File an Amended Complaint, which motion the Court granted. *See* ECF Nos. 20, 38.

The Amended Complaint alleges the following causes of action: (1) negligence by the WMATA employee who operated the Speed Swing, (2) negligence by WMATA in its training and supervision of the same WMATA employee, (3) negligence by WMATA's employees in their failure to position, inspect, and maintain a hydraulic fluid hose that ruptured, and (4) negligence by WMATA's employees in their failure to conduct a worksite briefing. Amend.

--2--

Compl. ¶¶ 31-48 [ECF No. 39].  Plaintiff seeks damages under the Virginia Wrongful Death Act, Va. Code §§ 8.01-50, et seq., or, alternatively, under both the District of Columbia Wrongful Death Act, D.C. Code § 16-2701, and the District of Columbia Survival of Actions Act, D.C. Code § 12-101.  Amend. Compl. ¶¶ 68-70 [ECF No. 39].

In its Motion to Dismiss the Amended Complaint In Part pending before the Court, WMATA asserts, *inter alia*, that the Virginia Wrongful Death Act does not apply in this case, but rather, the District of Columbia's Wrongful Death and Survival of Actions Acts govern. WMATA's Memo. of P. & A. In Support of Mot. to Dismiss Pl.'s Amend. Compl. In Part at 7-8 [ECF No. 40-1].  Plaintiff disagrees.  *See* Pl.'s Opp'n to Def.'s Mot. to Dismiss the Am. Compl. In Part 16 [ECF No. 48].

## II.

Notwithstanding the parties' disagreement as to whether District of Columbia or Virginia law governs damages, the parties do agree, at least, that to resolve this choice of law dispute the Court must apply the choice of law rules of the District of Columbia.  *See, e.g., Wu v. Stomber*, 750 F.3d 944, 949 (D.C. Cir. 2014) ("As a general matter, we must apply the choice-of-law rules of the jurisdiction in which we sit – namely, the District of Columbia.").  "D.C. law employs 'a modified governmental interests analysis which seeks to identify the jurisdiction with the most significant relationship to the dispute.'"  *In re APA Assessment Fee Litig.*, 766 F.3d 39, 51 (D.C. Cir. 2014) (quoting *Washkoviak v. Student Loan Mktg. Ass'n*, 900 A.2d 168, 180 (D.C. 2006)).

In performing the governmental interests analysis, the Court must "evaluate the governmental policies underlying the applicable laws and determine which jurisdiction's policy

would be more advanced by the application of its law to the facts of the case under review."

*District of Columbia v. Coleman*, 667 A.2d 811, 816 (D.C. 1995).  The Court also considers

> the four factors enumerated in the Restatement (Second) of Conflict
> of Laws § 145:
>
> a)  the place where the injury occurred;
> b)  the place where the conduct causing the injury occurred;
> c)  the domicile, residence, nationality, place of incorporation and
>     place of business of the parties; and
> d)  the place where the relationship is centered.

*Coleman*, 667 A.2d at 816 (citation omitted); *accord Wu*, 750 F.3d at 949.  "'These contacts are

to be evaluated according to their relative importance with respect to the particular issue.'"  *In re*

*APA Assessment Fee Litig.*, 766 F.3d at 53 (quoting Restatement (Second) of Conflict of Laws §

145(2)).  "[I]f the balance of factors [is] uncertain . . . D.C. choice-of-law rules require, in a case

where the factors do not point to a clear answer, that we apply D.C. tort law, the law of the forum

state."  *Wu*, 750 F.3d at 949.

     "Initially, we must 'determine whether a "true conflict" exists' between the laws of the

two jurisdictions—'that is, whether more than one jurisdiction has a potential interest in having

its law applied and, if so, whether the law of the competing jurisdictions is different.'"  *In re*

*APA Assessment Fee Litig.*, 766 F.3d at 51-52 (citation omitted).  Here, plaintiff's Amended

Complaint seeks the application of Virginia's Wrongful Death Act to its claim for damages, and,

in the alternative, seeks the application of the District of Columbia's Wrongful Death and

Survival Action Acts.  The law in these jurisdictions, while similar in some regards, is different

in others.

The purpose of the District of Columbia's Wrongful Death Act[1] is to permit a decedent's next of kin to recover damages for "'the pecuniary benefits that [they] might reasonably be expected to have derived from the deceased had he lived,'" *Lewis v. Lewis*, 708 A.2d 249, 251-52 (D.C. 1998) (quoting *Semler v. Psychiatric Inst. of Washington, D.C., Inc.*, 575 F.2d 922, 925 (D.C. Cir. 1978)), including "(1) . . . the loss of financial support the decedent could have been expected to provide the next of kin had he lived; and (2) the value of lost services (e.g., care, education, training, and personal advice)." *Herbert v. D.C.*, 808 A.2d 776, 778 n.2 (D.C. 2002). Notably, the District of Columbia "does not recognize solatium damages in wrongful death causes of action." *Bettis v. Islamic Republic of Iran*, 315 F.3d 325, 332 (D.C. Cir. 2003); *see generally Belkin v. Islamic Republic of Iran*, 667 F. Supp. 2d 8, 22 (D.D.C. 2009) ("A claim of solatium is a claim for the mental anguish, bereavement and grief that those with a close personal relationship to a decedent experience as the result of the decedent's death, as well as the harm caused by the loss of the decedent, society and comfort.").

Additionally, the District of Columbia's Survival Act[2] "preserves and carries forward for the benefit of the [decedent's] estate the right of action which the [decedent] would have had,

---

[1] The District of Columbia's Wrongful Death Act provides, in relevant part:

> [D]amages shall be assessed with reference to the injury resulting from the act, neglect, or default causing the death, to the . . . next of kin of the deceased person; and shall include the reasonable expenses of last illness and burial.

D.C. Code § 16-2701.

[2] The District of Columbia's Survival Act provides:

> On the death of a person in whose favor or against whom a right of action has accrued for any cause prior to his death, the right of action, for all such cases, survives in favor of or against the legal representative of the deceased.

D.C. Code § 12-101.

had he not died." *Semler*, 575 F.2d at 925. "The [Survival] Act is designed to place the [decedent's] estate in the position it would have been in had the [decedent's] life not been cut short." *Id.* Accordingly, "recovery under the [Survival] Act is based on the probable net future earnings reduced by the amount [decedent] would have used to maintain himself and those entitled to recover under the Wrongful Death Act." *Id.* Furthermore, the decedent's estate may recover damages for the decedent's pain and suffering prior to death. *Graves v. United States*, 517 F. Supp. 95, 99 (D.D.C. 1981).

Under Virginia's Wrongful Death Statute,[3] similar to the District of Columbia's Wrongful Death and Survival Acts, the decedent's surviving relatives are eligible to recover damages "for the pecuniary loss [they] sustained . . . (including the probable earnings of the [decedent] for the duration of his life expectancy in view of his health, age, business capacity, and experience) [and] also for loss of [decedent's] care, attention and society." *Wilson v. Whittaker*, 207 Va. 1032, 1037 (1967). Unlike the District of Columbia's Wrongful Death and Survival Acts, however, Virginia's Wrongful Death Statute *does* permit the recovery of solatium damages, *Wilson*, 207 Va. at 1037, and *does not* permit recovery of damages for the decedent's pain and suffering prior to death, *El-Meswari v. Washington Gas Light Co.*, 785 F.2d 483, 491 (4th Cir. 1986).

---

[3] Virginia's Wrongful Death Statute provides, in relevant part:

> Whenever the death of a person shall be caused by the . . . neglect . . . of any person or corporation . . . and the . . . neglect . . . is such as would, if death had not ensued, have entitled the party injured to maintain an action . . . and to recover damages in respect thereof, then, and in every such case, the person who . . . would have been liable, if death had not ensued, shall be liable to an action for damages[.]

Va. Code Ann. § 8.01-50.

In sum, while both jurisdictions permit the recovery of pecuniary damages suffered by the decedent's surviving relatives, District of Columbia law *prohibits* the recovery of solatium damages, but *permits* the recovery of damages for the decedent's pain and suffering prior to death, whereas Virginia law *permits* recovery of solatium damages, but *prohibits* the recovery of damages for the decedent's pain and suffering prior to death.  Therefore, a "true conflict" exists between the laws of the two jurisdictions.  *In re APA Assessment Fee Litig.*, 766 F.3d at 51-52.

That the District of Columbia and Virginia variously have broader and narrower parameters regarding the damages one may recover under their respective tort laws reflects these jurisdictions' competing interests regarding the extents to which tortfeasors are to be held liable for their negligent acts and to which each jurisdiction's residents are to be shielded from certain types of claims—these interests are entitled to equal consideration.  *See generally* Restatement (Second) of Conflict of Laws § 145, cmt. c (1971) (A rule which exempts the actor from liability for harmful conduct is entitled to the same consideration in the choice-of-law process as is a rule which imposes liability).

In determining whether the District of Columbia or Virginia has the stronger interest, the Court may "look to Virginia choice of law rules to ascertain the interest of Virginia in application of its law to the facts of this case."  *Biscoe v. Arlington Cty.*, 738 F.2d 1352, 1362 (D.C. Cir. 1984); *see Paxton v. Washington Hosp. Ctr. Corp.*, 991 F. Supp. 2d 29, 33 (D.D.C. 2013) (noting that "the law Virginia would apply if this case were brought there is relevant because it helps this Court determine what Virginia courts believe Virginia's governmental interest is").  Virginia choice of law rules would require application of the law of the place where the injury or death occurred.  *See Demetres v. E. W. Const., Inc.*, 776 F.3d 271, 273 (4th Cir.

2015) ("Virginia subscribes to the *lex loci delicti* principle for determining the applicable substantive law in tort suits. According to that principle, the law of the place in which the injury occurred governs the substantive cause of action." (citing *Jones v. R.S. Jones & Assocs., Inc.*, 246 Va. 3, 431 S.E.2d 33, 34 (1993))). Therefore, had this case been brought in Virginia, the Virginia courts would have applied the District of Columbia's Wrongful Death and Survival Acts. By comparison, District of Columbia choice of law rules require a governmental interest analysis and, in the event of a tie, require the application of District of Columbia law. *See Wu*, 750 F.3d at 949 ("[I]f the balance of factors [is] uncertain . . . D.C. choice-of-law rules require, in a case where the factors do not point to a clear answer, that we apply D.C. tort law, the law of the forum state."). Accordingly, the Court concludes that Virginia possesses a weaker governmental interest in the application of its law to the facts of this case.

Moreover, the Restatement factors favor application of District of Columbia law. First, the death occurred in the District of Columbia. Second, the conduct that allegedly caused the death also occurred in the District of Columbia. The third factor is neither in favor nor against the application of District of Columbia law; while the decedent and plaintiff were residents of Virginia at the time of the death, WMATA's place of business is located in the District of Columbia. Fourth, the parties' relationship was centered in the District of Columbia. Although plaintiff emphasizes that WMATA conducts business in Virginia, Maryland, and the District of Columbia, WMATA's place of business, as noted above, is located in the District of Columbia and at the time of his death the decedent worked for a subcontractor, Holland, LLC, that WMATA had contracted to assist in replacing part of a Metro rail line located in the District of Columbia. In sum, as all but the third Restatement factor dictate application of District of

Columbia law, the Restatement factors add significant weight to the District of Columbia's governmental interest in the application of its law to this case.

In his opposition to WMATA's motion, plaintiff relies on four cases that, he believes, reflect the consensus of this Court that out-of-state damages should be applied when a person from another jurisdiction is injured: *Burton v. United States*, 668 F. Supp. 2d 86 (D.D.C. 2009); *Estate of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229 (D.D.C. 2006); *Long v. Sears Roebuck & Co.*, 877 F. Supp. 8 (D.D.C. 1995); and *Keene Corp. v. Ins. Co. of N. Am.*, 597 F. Supp. 934, 936 (D.D.C. 1984). The Court disagrees; to the extent the cases cited by plaintiff reflect an application of out-of-state law to a damages claim, they are readily distinguishable from the case at bar.

As to *Burton* and *Long*, in both cases the Court applied District of Columbia law to all of plaintiffs' damages claims, except that it applied Maryland law to the decedents' spouses' loss of consortium claims because their marriages were domiciled in Maryland. *Burton*, 668 F. Supp. 2d at 109-13; *Long*, 877 F. Supp. at 12-15. Indeed, because loss of consortium claims relate to an injury to the marriage itself, and because each state has a significant governmental interest in regulating the legal rights of its married couples, the District of Columbia applies the law of the state where the marriage is domiciled to consortium claims. *See, e.g., Long*, 877 F. Supp. at 13. Here, however, plaintiff's damages relate solely to individuals outside of the marital relationship (indeed, as noted above, Mr. Ingram was not married at the time of his death). Therefore, the significant governmental interest that Virginia would have in regulating the legal rights of married couples is not applicable here.

*Heiser* is likewise distinguishable. That case, unlike this one, was brought under the Foreign Sovereign Immunities Act and involved a mass tort arising from the 1996 terrorist bombing of a residence on a United States military base in Dhahran, Saudi Arabia. *Heiser*, 466 F. Supp. 2d at 248. In *Heiser*, the Court applied the laws of thirteen different states to the plaintiffs' respective claims for damages because, "[g]enerally, application of [the] governmental interest test points to the law of *each* plaintiff's domicile at the time of the attack as having the greatest interest in providing redress to its citizens." *Heiser*, 466 F. Supp. 2d at 266 (D.D.C. 2006) (citing *Dammarell v. Islamic Republic of Iran*, 2005 WL 756090, at *20-21 (D.D.C. Mar. 29, 2005)). Indeed, states have a strong interest in the welfare of survivors of terrorist attacks and mass torts. *See Dammarell*, 2005 WL 756090, at *20 (noting that in the context of mass tort cases "[e]ach state will choose rules of liability and damages that it thinks are best designed to protect the welfare of its citizens"); *cf. Heiser*, 466 F. Supp. 2d at 266 (noting that "the United States has a 'unique interest' in having its domestic law apply in cases involving terrorist attacks on United States citizens"). However, as this case does not arise from a terrorist attack or mass tort, Virginia could not possess such an interest in plaintiff's damages claims against WMATA.

Finally, plaintiff's reliance on *Keene* is factually and legally inapposite, as that case involved punitive damages claims against three different insurance companies. *See Keene*, 597 F. Supp. at 936, 938 (noting that "[s]tates' interests in compensatory damages differ from those involved in punitive damages" and that "[w]hen the primary purpose of a rule of law is to deter or punish conduct, the States with the most significant interests are those in which the conduct occurred and in which the principal place of business and place of incorporation of defendant are located").

--10--

In short, as Virginia has the weaker interest in the application of its law to this case, and in light of the Restatement factors weighing in favor of the application of District of Columbia law, the Court concludes that the District of Columbia is "the jurisdiction with the most significant relationship to the dispute." *In re APA Assessment Fee Litig.*, 766 F.3d at 51.

## III.

For the foregoing reasons, the Court will grant in part defendant WMATA's Motion to Dismiss Plaintiff's Amended Complaint In Part [ECF No. 40] with respect to the claim for compensatory damages pursuant to the Virginia Wrongful Death Act. As noted above, the Court will separately address that part of WMATA's motion that seeks dismissal of plaintiff's claim for negligent supervision and training. An appropriate order will accompany this memorandum opinion.

March 31, 2016

Thomas F. Hogan
Senior United States District Judge

--11--